In the Matter of the Estate of Harold W. Hurlbut, Deceased.*

Surrogate's Court, New York County, November 4, 1943.

* See, also, *Matter of Ryley*, 180 Misc. 696. — [Rep.

*Matthew G. Herold* for Mary F. Hurlbut and Irving Trust Company, petitioners.

*Richard S. Holmes* for Mary Harte, respondent.

*I. Montefiore Levy,* special guardian for Wayne H. Hurlbut.

FOLEY, S.   In this accounting proceeding of the transactions of the executors and trustees, the important question presented is the amount, if any, of principal commissions which may be awarded to the fiduciaries in their capacities as trustees under the new form of section 285-a of the Surrogate's Court Act. That section was enacted by chapter 694 of the Laws of 1943 and went into effect on September 1, 1943.   A companion

measure of substantial similarity was carried into an entirely new form of section 1548 of the Civil Practice Act. (L. 1943, ch. 695.) Its terms apply to commissions of trustees of expressed trusts.

One of the accounting trustees is an individual. The other is a corporation. In their account they seek an allowance of principal commissions for receiving the fund under the former law.

A revolutionary change was made by the new legislation in the method of computing commissions of trustees. The basis of computation of commissions of executors, administrators and guardians continued unchanged.

Under the form of section 285 of the Surrogate's Court Act, as it existed prior to September 1, 1943, principal commissions of testamentary trustees were authorized to be awarded at fixed percentage rates for " *receiving* and *paying out* " moneys and other assets of the estate. One half of the total was allowed for receiving commissions by the decree on the first or subsequent intermediate accounting of the trustees. The remaining one half, representing the paying-out commissions, was allowed by the decree in an accounting proceeding after a partial distribution of principal or upon the final distribution after the termination of the trust. This method has now been abolished. The new plan authorizes the withdrawal by a trustee out of principal of 110% of the amount of income commissions in each year. As to income commissions, the percentage rates formerly applied were increased.

The new rates of income commissions are: 6% on the first $2,000 of income " collected in each year ", 3% on the next $10,000 and 2% on the balance of income similarly " collected in each year ".

The new section has been criticised because of the serious defects contained in it. The courts are not empowered to act in the correction of these defects. The section must be construed as it was written into the law. Beneficial alterations cannot be made under judicial fiat by any trespass into the field of legislative jurisdiction.

The trustees' contentions that they are entitled to principal commissions under the former statute are overruled.

It has been the long-established rule in this State that commissions are to be awarded under the method of computation and at the rates fixed by the law in effect at the time of the making of the decree judicially settling the account of the fiduciary. (*Robertson* v. *De Brulatour,* 188 N. Y. 301; *Matter*

*of Barker,* 230 N. Y. 364, 372; *Matter of King,* 121 Misc. 530.) That rule, however, may yield where there is an expressed or fairly implied intent shown in the applicable statute which either confines the commissions to a definite period or directs a prospective basis only from the effective date of the statute. Typical of these cases is one of the two present sections, numbered section 285-b of the Surrogate's Court Act, which authorizes extra commissions for servicing mortgages for a definite emergency period with an initial and terminating date set forth in the section. Under this section, necessarily, commissions could not be allowed for services rendered before or after the period fixed by the Legislature.

The Surrogate holds that the legislative intent expressed in the new section clearly comprehended that the new rates of principal commissions should be allowed prospectively only, and beginning September 1, 1943. Principal commissions under the new formula cannot be based upon any income earned upon the trust prior to that date. Under the legislative plan principal commissions can only be withdrawn or allowed at the expiration on August 31, 1944, of the first year of the effective operation of the new statute. The amount of income collected will then be known for the first time and principal commissions at the rate of 110% of income commissions may then be withdrawn or allowed by a decree. A similar rule applies to each successive year of the duration of the trust. Support for these conclusions is found in the entire context, but particularly in the provisions of subdivision 2 of section 285-a. It is therein provided that a " trustee of a testamentary trust who has received a commission on principal prior to the date this section becomes effective shall receive commissions from principal hereunder *only after* the amount of commission from principal to which he otherwise would have been entitled hereunder exceeds the amount which he has received *prior to such date.*" (Italics supplied.) It will be remembered that the effective date of the section was September 1, 1943. The above-quoted words of the section may be expressed differently, but in exact substance, that where a trustee has been paid receiving commissions awarded to him by a decree, he is forbidden to withdraw any further commissions after September 1, 1943, over a period of years until the amount of the previous payment of receiving commissions has been absorbed by the annual allowance for commissions under the new formula.

The method of computation may, perhaps, be more easily understood by a reference to a theoretical trust. Assume a fund of $100,000. The trustee has been awarded by a decree and paid, under the former statutory rates, the sum of $1,010 for receiving the fund. On an annual income of $4,000, estimated at the rate of 4%, the new income commissions would be $180 (i. e., under the first bracket, 6% of $2,000, or $120; under the second bracket, 3% of $2,000, the balance of income, or $60, or a total of $180). One hundred and ten per cent of this total, which is the measurement of principal commissions, is $198. Applying this amount each year as an installment on the receiving commissions, it will require approximately five years for the new commissions to equal the sum of $1,010 previously paid. Therefore, during the period beginning September 1, 1944, to August 31, 1948, the withdrawal or payment of commissions is tolled under the new section. Principal commissions thereby become payable for the first time at the computed annual amount after August 31, 1949, for the specific year ending on that day.

This prospective application of the new section has been similarly construed by its sponsors whose opinion at least on this phase of its construction may throw light upon its purpose. The legislative measure was recommended by the " Trust Companies Association of the State of New York." The chairman of its Legislative Committee, who had direct supervision of its draftsmanship and passage, was Bernard A. Gray. In a recent article written by him in " The Trust Bulletin — May, 1943 ", in his construction of this section he states: " In those cases where a testamentary trustee has been allowed receiving commissions before the new law becomes effective, no annual principal commissions can be taken until the aggregate of the annual principal commissions to which he otherwise would have been entitled under the law exceeds the principal commissions already taken. This means, simply, that credit must be given by the trustee for principal commissions received before more principal commissions can be taken. The number of years which the trust may have been in existence before the new law becomes effective will not be considered in computing the total of the annual principal commissions to which the trustee ' otherwise would have been entitled ' under the law for the purpose of computing the offset against the receiving commissions taken. The law is not retroactive in that respect."

It is equally clear that the new section is not retroactive so as to permit an allowance of principal commissions based upon income earned during any year before it went into effect. This

is so whether receiving commissions were paid or not paid to the trustee. The prospective operation of the section must be uniformly applied to all principal commissions. A trustee who has received his commissions cannot, under the theoretical trust mentioned above, obtain any additional commissions until the expiration of the five-year period. A trustee who has not been awarded and paid receiving commissions on principal begins the withdrawal of his annual principal commissions after August 31, 1944. At the end of the prospective five-year period of the theoretical trust chosen by the Surrogate as an example, such a trustee will have received a total of the annual installments equal to what he might have been allowed prior to the enactment, under a decree, for receiving commissions. At that time he occupies the same position in the withdrawal of compensation as a trustee who had been paid such receiving commissions prior to the effective date of the section. From a date as of the expiration of the five-year period each type of trustee will receive commissions at the annual rates at the expiration of each successive year.

The theoretical trust chosen above as an example, of course, is not conclusive as to the duration of the tolling in other trusts of smaller or larger amounts or with an annual income more or less than the 4% rate selected. Where receiving commissions have been awarded to a trustee prior to the effective date of the new section, the period of toll must necessarily vary with these changing factors.

Finally, the new section also contains a unique provision in subdivision 9, which authorizes the surrogate " in his discretion " to allow a trustee " additional compensation as under the circumstances may be just and reasonable, if the trustee's duties have been unusually difficult or burdensome, or if for any other reason the commissions herein provided do not adequately compensate him for services rendered."

The elimination of this subdivision from the section was recommended by Governor Dewey in his message approving the enactment of the section. While it remains in force this unsought power and authority, necessarily, should be sparingly, if ever, used by the surrogates. Under the language of the subdivision there would be no basis for the exercise of discretion in a case such as here where compensation was sought as a substitute for the failure of the trustees to obtain by judicial decree an allowance for receiving commissions. Moreover, from its context, discretion could only be exercised to award additional compensation where the duties of the trustees were

" unusually difficult or burdensome ". These conclusions follow from the application of the doctrines of *ejusdem generis* and *noscitur a sociis*. The words " for any other reason " would be limited in meaning to special cases within the class referred to in the immediately prior phrase " if the trustee's duties have been unusually difficult or burdensome ". Under these doctrines, where there are general words following particular and specific words, the general words must be confined to matters of the same kind as those specified. A contrary construction of the phrase " for any other reason " would permit the surrogate in his discretion to award any amount of compensation to the trustee ·in every case and even where the services were ordinary and normal. He could thereby ignore the percentage rates fixed in the prior provisions of the new section. Certainly, no such incongruous intent could be imputed to the Legislature.

In the pending proceeding there is no claim that the services were difficult or burdensome. The discretion of the Surrogate, therefore, will not be exercised for the purpose of granting any compensation to the trustees.

For the foregoing reasons neither of the trustees can be awarded principal commissions at this time.

No question is presented here as to the allowance of income commissions to the trustees on income earned prior to September 1, 1943, since no income commissions are sought.

[Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.]

Submit decree on notice settling the account accordingly.